## P. J. WILLIS & BRO. v. W. T. THOMPSON.

### No. 7550.

**1. Claim Bond in Trial of Right of Property.**—A trustee filed affidavit and claim bond to try the right of property in certain goods, etc., seized under attachment. The claim bond was signed by two sureties, one of whom was a beneficiary in the trust. In motion for new trial objection was first made to the sufficiency of the bond on ground of the incompetency of one of the sureties. *Held,* that the objection came too late.

**2. Chattel Mortgage—Registry.**—A conveyance to a trustee for the benefit of creditors named included real estate and a stock of merchandise. The deed was filed for record as for real estate, and a copy of the deed deposited with the county clerk for entry as chattel mortgage. The deed was duly acknowledged. The execution of the deed was proved. *Held,* that the registration laws were complied with, so as to give to the deed effect from date of filing, against an attaching creditor. The neglect of the clerk to make proper record entries, as required by the statute, would not prejudice the rights of the beneficiaries.

**3. Trial of Right of Property.**—It is the settled law of this State that one not in possession of the property, nor entitled to the same at the date of the levy, can not resort to the statutory method of the trial of the right of property for the purpose of having determined the priority of liens upon such property.

**4. Statute for Trial of Right of Property.**— Under the statute the owner, or one who is entitled to the immediate possession of property levied upon, may make claim and be entitled to have his rights adjudicated under the statute for trial of right of property. Rev. Stats., arts. 4822–4847.

**5. Same—Trustee in Possession or Having Right to Possession.** Although a mortgagee not in possession can not maintain an action for the possession of the mortgaged property, still such right may be asserted by a trustee having possession, or the right to immediate possession.

**6. Same.**—The claimant is not required to swear that he is the owner of the property, or was in the actual possession, but he must show that his claim is made in good faith, and must further establish his right to the property itself.

**7. Levy Upon Mortgaged Property.**— A debtor firm conveyed its assets to a trustee to be sold for the benefit of creditors named. A subsequent attaching creditor could reach whatever interest remained in the mortgagors by a levy by *notice* to the parties in possession. The officer taking the possession gave the trustee the right to recover it. Such recovery was properly sought by claim and bond, etc.

**8. Registry of Chattel Mortgage.**—The filing of a chattel mortgage for registry, in absence of fraud, gives it validity against a subsequent attaching creditor. It operates upon the property, although an immediate change of possession was not given to the trustee named in the mortgage, and to whom right to possession was given.

**9. Mortgage Held Valid.**— A conveyance was executed to a trustee by an insolvent firm for the benefit of preferred creditors, empowering the trustee to take immediate possession, and "to proceed at once to sell the same at either public or private sale, which may be continued from day to day until all of said property is sold for cash," etc. *Held,* that the mode of sale prescribed was not in violation of the statute against conveyances intended to hinder or delay, etc., creditors.

**10. Delivery of Trust Deed — Acceptance.—** A trust deed declared as beneficiaries two creditors of the makers of the deed. One of the named beneficiaries accepted the deed and placed it on record, etc. The other creditor knew nothing of it until after the goods were attached by other creditors. The goods were not of value equal to the claim of the accepting creditor. *Held*, that the fact that one of the beneficiaries had not accepted would not invalidate the deed, or deprive the trustee of the right to possession of the goods, etc.

**11. Lien by Partnership Creditor.—** Creditors of a firm which was dissolved by one partner buying the interest in the firm business from his copartner, have no lien against the firm assets after the dissolution, none having been preserved in the dissolution.

Appeal from McLennan. Tried below before Hon. J. R. Dickinson.

The counsel for the appellants have made the following statement of the nature and result of the suit, viz.:

"On the 26th of October, 1888, P. J. Willis & Bro. filed suit in the District Court of McLennan County against J. W. Satterfield & Bro. (W. I. Satterfield) on note and open account due by the firm of J. W. Satterfield & Bro., aggregating the sum of $1429.80, and caused writ of attachment to issue, which was levied upon the goods and lots in question about 8 o'clock on that evening; the sheriff finding Mrs. Satterfield, wife of J. W. Satterfield, in possession of the key to the store, and the store closed.

"Writ of attachment was sent to Hill County, where W. I. Satterfield resides, and returned, no property found.

"On November 8 following, appellee W. T. Thompson filed his claimant's oath and bond, as found in the record.

"At the ensuing term of the court appellants recovered judgment against the firm and individual members of the firm of J. W. Satterfield & Bro., and under issues made up under the direction of the court, the trial of the right of property in question was had, appellee Thompson claiming the property under deed of trust or chattel mortgage executed by J. W. Satterfield.

"Appellants demurred generally and specially to the tender of issues by appellee, and upon trial before the court without a jury judgment was rendered for the claimant W. T. Thompson. Motion for new trial was overruled, and the court filed his conclusions of fact and law, and appellants, plaintiffs below, appeal to this court and assign error."

The appellee was made the trustee in the deed of trust and empowered to take immediate possession of the goods, wares, and merchandise, etc., now in controversy, and was required by the terms of the instrument "to proceed at once to sell the same at either public or private sale, which may be continued from day to day until all of said property is sold for cash," etc. The mortgage was executed by J. W. Satterfield for the purpose of securing the payment of two debts, amounting to over $1400, in

favor of Jink Evans, and another debt for $500 in favor of Alexander Massey, etc. There is no claim that the value of the property mortgaged exceeded the amount of these debts, but in fact it appears that the property levied upon by the plaintiffs will not be sufficient to satisfy even the debts owing to Jink Evans.

Among other things, the court in his finding of fact finds, "that J. W. Satterfield came from Axtel with Jink Evans, his creditor and beneficiary under the trust deed, to Waco on the night of October 24, 1888, and the deed of trust was prepared, executed, and recorded on the morning of the 25th of October. That when said Satterfield came to Waco, he left his clerk in charge of the store, and on the morning of the 25th of October the clerk opened the store and sold goods after his usual custom up to about 3 o'clock p. m., when he learned that J. W. Satterfield desired the store closed. This he did, and gave the key to Dr. Clark, who delivered it without delay to J. W. Satterfield's wife, with the request that she should hold it for appellee, the trustee named in the trust deed. That about 8 o'clock p. m. the sheriff demanded the key to the store from Mrs. Satterfield, and she gave it to him upon his official demand, and he then attached said goods. That appellee, as trustee, did not know of his appointment as trustee until about 10 o'clock on the same night, and after plaintiffs' attachment, and that he never had actual possession of the goods until he made claim to them in this suit. Axtel is eight or ten miles from Waco, and Satterfield, as soon as he had an opportunity, after making the deed of trust, sent word home to close the store and that the key be delivered to Thompson, the appellee."

The court, as conclusions of law, found:

"1. That the deed of trust created a lien on the stock of goods covered by it, with a right of possession in the trustee.

"2. That the legal title to the property at the date of the trial was in appellee.

"3. That actual possession of the goods was not necessary to entitle him (appellee) to maintain his action of trial for right of property.

"5. The deed of trust created more than a lien on the property, and the trustee had the right of possession, and he could maintain his action of trial of right of property.

"6. The connection of Satterfield's clerk with the goods after the execution of the trust deed was discontinued as soon as word reached him that the matter was consummated between Satterfield and J. Evans, and I do not think the continued possession of the goods disclosed by this record vitiated the deed."

We do not understand how the writ of attachment could have been executed upon the 25th of October, as it clearly appears from the record, as well as from the statement of the appellants' counsel, that the writ was not issued until the 26th of that month. It is conceded, however, that

the appellee did not in fact have actual possession of the property at the time of the levy of the attachment, and the record shows that the deed of trust was not acknowledged nor filed for registration until the 26th. The court below was evidently mistaken as to dates, and those things which are stated in the findings as having occurred on the 25th, in fact occurred on the 26th of October, etc.

[This statement accompanied the opinion.]

*Scarborough & Rogers*, for appellants.—1. The court erred in holding that the court had acquired jurisdiction in this cause, this being a trial of the right of property under the statute, and the bond filed herein only having one surety on it, the other name, to-wit, Jink Evans, being one of the beneficiaries under the deed of trust. In trials of the right of property under the statute the court acquires no jurisdiction until bond, in compliance with the statute, has been filed.

2. The trial of the right of property will not lie when the claimant does not assert title in himself. If the title is in another, and the claimant only has a lien on the property in question, the statutory method of trial of the right of property is not his remedy, regardless of the question of possession. Rev. Stats., arts. 4822, 4824, 4843; Adoue v. Seeligson, 54 Texas, 594; Gibbons v. Stevens, 8 How., 384; Pome. Eq., secs. 162, 376, 1180, 1181, 1189, 1190, 1229, and note.

3. An instrument which is both a chattel mortgage and a mortgage on real property, filed and recorded at length in the mortgage record for real estate, but not entered on the chattel mortgage register, is not a valid chattel mortgage as against an attaching creditor of the mortgagor.

4. The law will not permit a party to get possession of property under an absolute claim of title and then maintain that possession by proof of a mere lien upon it. 54 Texas, 594; 64 Texas, 597; 73 Texas, 533.

5. Every chattel mortgage given by a merchant upon his stock of goods not accompanied by actual and continued change of possession, is void as to attaching creditors. 54 Texas, 594; 57 Texas, 91; 60 Texas, 583; 64 Texas, 597; 73 Texas, 533.

6. Where one member of an insolvent partnership purchases the interest of his copartner, the goods in the hands of the purchasing partner are subject to the superior lien of partnership creditors. 57 Texas, 665; 64 Texas, 49; 17 Am. Dec., 802; 18 Am. Dec., 377; 19 Am. Dec., 697.

7. A valid mortgage can not exist in the absence of the consent of all parties to the contract. 67 Texas, 431, and authorities; Jones on Chat. Mort., sec. 104.

*Clark, Dyer & Bolinger*, for appellee.—1. A trial of right of property proceeding as provided by statute will lie in favor of one claiming possession of property, and possession is an element which will as effectually

confer such right of action as title.    Halff, Weiss & Co. v. Allyn & Co.,
60 Texas, 278;  Fox & Bro. v. Willis & Bro., 60 Texas, 374;  Allyn &
Co. v. Willis & Bro., 65 Texas, 66;  Osborn v. Koenigheim, 57 Texas,
95;  Schmick v. Bateman, 77 Texas, 330;  67 Texas, 100.

2.  The deed of trust from J. W. Satterfield to appellee as trustee em-
braced both lands and the personal property claimed herein, and it was
recorded at length as required by law in cases of real estate, and a true
copy thereof was filed for registration with the county clerk of McLen-
nan County, as required by the chattel mortgage act.    Sayles' Civ. Stats.,
art. 3190b.

3.  By the deed of trust from J. W. Satterfield to appellee, the legal
title to the property passed and the right to immediate possession by the
terms of the trust deed passed to him; and he, appellee, under the facts
established in evidence, had the actual and constructive possession of the
goods.    Sayles' Civ. Stats., art. 3190b.

4.  A chattel mortgage or deed of trust on a stock of goods providing
for an exclusive possession by the mortgagee or trustee is valid.    Hudson
v. Wilkinson, 61 Texas, 606;  Styles v. Hill, Fontaine & Co., 62 Texas,
429;  Bank v. Lovenberg, 63 Texas, 506;  Jackson v. Harby, 65 Texas,
710;  Watterman v. Silberberg, 67 Texas, 100;  Scott v. McDaniel, 67
Texas, 315.

5.  A chattel mortgage or trust deed providing that the mortgagee or
trustee shall proceed to sell at once, and continue from day to day until
all the property is sold, does not render such a mortgage void as hinder-
ing and delaying creditors.    This is a prompt disposition of the goods,
making the trust deed valid under the authority of Gallager v. Gold-
frank, 75 Texas, 562.

MARR, JUDGE, *Section A.*—In the motion for a new trial the appellant
objected for the first time to the sufficiency of the appellee's replevy bond,
upon the ground that Jink Evans, who is one of the beneficiaries in the
trust deed, was also one of the two sureties that had been accepted upon
the bond, and therefore, that the court had no jurisdiction of this contro-
versy.    We think that the objection came too late, even if otherwise ten-
able.    The bond was not void, and the appellants had treated the security
as ample until after the trial of the cause.

We will next notice the third assignment of error.    It relates to the
action of the court in admitting in evidence the original deed of trust over
the plaintiffs' objections.    They objected to its admission upon numerous
grounds, nearly all of which relate, however, to matters of fact dehors the
instrument, and the same questions are presented by other assignments,
and will be disposed of elsewhere.

The only objection that we need to notice in this connection is the fol-

lowing: "Because there was no proper proof of filing, and no proof at all of registration." There was no objection that the execution of the instrument had not been proved upon the trial, and the court finds that it was duly executed and filed for registration before the levy of the attachment. As there is no statement of facts, it might be presumed from such finding of the court, that the execution was proven, if that question had been presented, but it is not presented. It appears from the certificates of the county clerk, endorsed upon the original instrument, that the deed of trust (which also embraced real estate) was recorded in full in the proper mortgage record on the 12th day of October, 1888, and that at 5:15 o'clock a. m. of that day "a true copy of the mortgage was deposited and filed" with him, evidently for registration in the records of chattel mortgages. The court states that "Thompson offered to prove by the clerk of the County Court of McLennan County that a true copy of the mortgage offered in evidence had been duly deposited and filed in his office, as shown by the certificate on the deed of trust. Plaintiffs waived this proof, and no other proof of registration was offered."

Under the circumstances which we have detailed, we do not think that the foregoing objection to the admission of the trust deed was well taken, and therefore the court very properly overruled it. The copy of the instrument had been duly filed for registration as contemplated by the statute, and it took effect from that time. It was not necessary to its validity that it should have been recorded in full, nor could the failure of the clerk to make the proper record entries as provided for in the statute prejudice the rights of the beneficiaries. 2 Sayles' Civ. Stats., art. 3190b, sec. 4; Freiberg v. Magale, 70 Texas, 116; Grounds v. Ingram, 75 Texas, 509; Betterton v. Echols, 85 Texas, 212.

The third and eighth (as well as the second) assignments of error question the right of the appellee as trustee, with the right to the immediate possession of the property, but not in the actual possession thereof at the time of the levy, to maintain this proceeding under the statutes relating to the subject of the trial of the rights of property. We are not aware that this precise point has been directly decided by the Supreme Court, unless such was the effect of the decision in Wootton v. Wheeler, 22 Texas, 338. There is but a brief opinion in that case, however, and the decision was evidently predicated upon the former case of Wright v. Henderson, 12 Texas, 43, and it appears that, unlike the present controversy, the trustee was not entitled to the immediate possession of the property nor required to take such possession in order to execute the trust reposed in him. In Wright v. Henderson, supra, it was said, inter alia, that "it. has been repeatedly decided by this court that a mortgage is but a security, and that the title remains in the mortgagor, subject to be divested by foreclosure of the mortgage. In this respect, the deed of trust in this case does not differ from a mortgage. The *possession* and ultimate right

of property remained with the *grantor* in the deed of trust, whose title could be completely and finally divested only by the execution of the trust," etc.   And in Wootton v. Wheeler, supra, the same learned jurist declared, that that case could "*not* be distinguished from the case of Wright v. Henderson," nor from Gillian v. Henderson, 12 Texas, 47, where the defendant asserted title under a simple mortgage.

In the case of Garrity v. Thompson, 64 Texas, 597, where the trustee was not entitled to the possession of the property, but the same remained with the grantor by the terms of the deed of trust, and the claim was made by the mortgagees, the same principle was announced as in Wright v. Henderson and Wootton v. Wheeler, supra, viz., " that a mortgagee out of possession can not assert his claim to property levied on by attachment or execution, in the manner prescribed by the statute."   Citing, also, Erwin v. Blanks, 60 Texas, 583, and other cases.

We do not in the least question the correctness of that decision, or of the principles of law announced as applicable to the facts of that controversy; but we do not think that any of the cases to which we have adverted, when confined to their own facts and issues, are decisive of the question in hand.

We concede that it is the settled law of this State, that one not in the actual possession of the property, nor entitled to the same at the date of the levy, can not resort to the statutory method of the trial of the rights of property, for the purpose of having determined the priority of the liens.   Belt v. Raguet, 27 Texas, 482.   These decisions proceed upon the grounds, that in such cases the claimant, having no title to the property nor present fixed right to the actual possession thereof, but only a lien thereon as a mere security for his debt, is not entitled to claim and recover the property itself, nor to prevent its seizure by other creditors upon legal process which under the law would be subordinate to his prior lien or security.   If that be endangered under such circumstances, or if he desires to enforce his superior claim on the property as a security, he can appeal to the equity powers of the court in either contingency for the appropriate relief.

Manifestly this reasoning does not apply when the claimant is either the owner of the property or entitled to its immediate possession or enjoyment.   We have been unable to find anything in the statute that would exclude the right to assert the claim in the statutory mode in either of such contingencies.   The claimant is not required to swear that he is the owner of the property, or was in the actual possession thereof at the time of the levy; but he must show that his claim is " made in good faith," and must further " establish his right to the property " itself, otherwise his claim will be without any legal foundation.   Rev. Stats., arts. 4822, 4825, 4839, 4840.

It seems to us that the purpose of the statute is to secure not only a

speedy method of determining the real ownership of the property, but also the right to the immediate possession, use, or enjoyment of the property when the claimant is entitled to this against even the true owner.

In Osborn v. Koenigheim, 57 Texas, 91, where there had been but a constructive or symbolical delivery of the property into the possession of the pledgee, his right to maintain the statutory claim and action was sustained. The court, among other principles announced, declared, that "the statute regulating the trial of the rights of property is intended to give to one who claims to be the owner of property, *or to the one who is entitled to the possession* of property, a simple remedy by which he may protect both his title and possession." See also Schmick v. Bateman, 77 Texas, 326.

In the present case, the deed of trust, in addition to conferring the power of sale and the right to the immediate possession of the property in controversy upon the appellee, as before explained, "sells, transfers, and delivers" the same to him for the purposes of the trust, and provides that he shall be allowed 10 per cent as commissions upon all sales and collections of accounts, which are also made a part of his duties.

It would seem that in a case like the present, where the debtor "is *not entitled to the possession* of the property," although he was in possession, and still had an interest therein at the date of the levy, the statutes do not authorize an actual seizure of the property in such case, but the levy of the execution or attachment should be levied by "notice." Such is the plain language of the law. Rev. Stats., arts. 2292, 2296, 166, 167.

In Osborn v. Koenigheim, supra, it was further said, that "it appears that the levy was made by the officer taking possession of the pledged property; and this, in our opinion, entitled the pledgee to resort to the statutory remedy to protect his possession. If under the statute the appellant should desire to sell such interest as his debtor has in the property, he can do so" (in the statutory mode, article 2292), "but the purchaser at such sale will have no right to the possession of the property, unless he satisfies the debt for which it stands pledged." Article 2296; see also Watterman v. Silberberg, 67 Texas, 106.

Although it does not appear to have been necessary to the decision of the questions actually involved under the facts of the case, yet in delivering the opinion of the court in White v. Jacobs, 66 Texas, 464, Chief Justice Willie used the following language: "The object of the law is to give to the claimant of personal property, seized under process of law, a summary method of asserting his title or *right of possession*, without a resort to an ordinary suit for a recovery of property or its value. His claim, however, must be one of title or *possession*. * * * Either the question of title in the claimant, or that of his right to hold possession as against *the defendant in the process*, is what is to be tried. If either is proved to exist in the *claimant*, he must succeed in the suit, and what enables him to maintain his claim will certainly authorize him to assert it." The right

of a mere lien holder, not in possession nor entitled to the possession, to assert the claim under the statute, was, however, distinctly repudiated. In several cases the right of the vendor of personal property to resort to the statutory method of testing his claim to the property before the transitus has ceased, has been recognized and actually permitted, although he was not in the possession of the goods, but depended upon his lien and the right of stoppage in transitu, which gave him the right to repossess himself of the goods and sell them in satisfaction of his debt, even as against an attaching creditor of the vendee.  Allyn v. Willis, 65 Texas, 65; Halff v. Allyn, 60 Texas, 278; Fox v. Willis, 60 Texas, 278.

The *title* to the property in such cases being in the vendee, the right of the vendor to proceed under the statutes in question for the protection of his claim, must have been sustained upon the grounds that he was *entitled* to the *possession* of the goods, and that such possession was necessary to enable him to exercise fully the rights of an unpaid vendor, and that furthermore, the statutory remedy was the most efficacious of the remedies at his command.  Chandler v. Fulton, 10ʻTexas, 23; Allyn v. Willis, supra.

There is apparently a close analogy between the character of claim or title which was sustained in those cases and the claim which the appellee is attempting to maintain in this controversy.  He could not execute the trust unless he obtained the actual possession of the property, as he had the right to do under the trust deed; but before he had an opportunity of taking such possession (though after the registration of the instrument), the appellants caused the goods to be seized upon their attachment, and thus compelled him to resort to some legal remedy in order to obtain the possession and carry out the trust.  Under such circumstances, we think that he was entitled to resort to the statutory mode for trying the rights of property, as the speediest method of acquiring the possession of the goods for the purpose of executing his duties as trustee.

The appellants further insist, by several assignments of error, that the deed of trust was void as to them, because there was " no immediate, actual, and continued change of possession," and because the terms of the instrument permitted the trustee to continue the sales " from day to day," which it is claimed would hinder and delay other creditors, etc.

In regard to the first point, it may be said, that as the copy of the trust deed was " forthwith deposited with and filed in the office of the county clerk " of the proper county, as·required by the statute relating to chattel mortgages, it was not necessary to the validity of the instrument, under that statute, even as against attaching creditors, and in the absence of fraud, that there should be " an immediate delivery, followed by an actual and continued change of possession of the property mortgaged," etc.  Sayles' Civ. Stats., art. 3190b.

The court found, as we have seen, that the grantor promptly sent orders for the cessation of his business and control over the property, and his clerk discontinued operations as soon as he was notified of the orders, and closed the store. The court further found, that there was no intent upon the part of the grantor to hinder, delay, or defraud his other creditors, but that he simply intended in good faith to prefer those two who were named in the trust deed. That instrument was not therefore void, under the statute of frauds and fraudulent conveyances. Labelle v. Tidball, 59 Texas, 292; Watterman v. Silberberg, 67 Texas, 100.

Touching the same point, we need only to say, that the instrument required the trustee to proceed "at once" to sell, and to continue the sales from day to day until all of the property should be sold, as we have already explained. He was not restricted as to prices, but was required to sell promptly, and at either public or private sale. In our opinion, there is nothing in the terms of the trust deed that would indicate any unnecessary delay in selling the property; but on the contrary, the greatest expedition seems to have been enjoined in this particular. The case of Gallagher v. Goldfrank, 75 Texas, 562, is not in point, therefore. See Simon & Co. v. McDonald, ante, p. 237.

The appellants also submit the proposition, that the deed of trust in question is invalid, and in fact was never operative as a valid contract, "because the proof clearly showed that Alexander Massey, one of the beneficiaries thereunder, had not consented to nor in any way ratified 'the action of the parties in making said deed of trust, and that he had no knowledge of its existence until after plaintiff's levy, if at all."

But upon the other hand, the findings of the court show that the other beneficiary, Jink Evans, procured the execution of the deed of trust and accepted the same, and caused it to be filed for record before the levy of the attachment. It was therefore a binding and complete contract between him and the grantor, whether binding upon Massey or not, which we need not now determine. His acceptance of the instrument under the circumstances was sufficient to secure the lien, at least in his own favor; and if we should concede that Massey's assent ought not to be presumed, still, in the absence of fraud, we do not think that the fact that the instrument included the debt due Massey (which was a just obligation), would vitiate the conveyance; and especially is this true when the property mortgaged is inadequate to satisfy the debts in favor of Evans. Jones on Chat. Mort., sec. 109.

Evans, by his prompt acceptance of the mortgage before the levy, having secured a valid lien upon the property, would certainly have the superior right to the satisfaction of his entire demand, as specified in the mortgage, out of the proceeds of the property mortgaged, as against any other creditor, except Massey. The other creditors would in no event be

entitled to anything beyond the *surplus*, if any, should they secure this in the proper mode as contemplated by law; but they can not prevent the execution of the trust, at least in favor of Evans. Whether Massey, under the circumstances, shall be entitled to participate in the distribution of the proceeds of the mortgaged property or not, we do not decide, as he is not a party to this suit. We do decide, however, that the lien of Jink Evans is superior to the claim of the appellants under the levy of their attachment, and that the appellee is entitled to the possession of the property under the deed of trust.

There is another question which has been presented by the appellants, that we will now consider. The appellants insist that they have a superior lien upon the property in dispute as firm creditors of J. W. Satterfield & Bro., because their debt was made with that firm before the dissolution of the partnership, and before the execution of the deed of trust in evidence. Without stopping to determine whether the goods in dispute were partnership property or the individual property of J. W. Satterfield, as held by the court below, we hold that under the law the appellants had no lien upon the property in dispute by reason of their position as firm creditors of J. W. Satterfield & Bro. at the time of the levy of the attachment. The quasi lien of a partnership creditor depends entirely upon the existence of the right of the individual partners to have the firm property applied to the satisfaction of the partnership debts. When W. I. Satterfield sold out his interest in the partnership to his brother (without preserving the lien in any manner), and thus dissolved the partnership, the quasi lien upon the property, either in his favor or that of appellants, was thereby lost. We have heretofore fully expressed our views upon this subject, and do not think that it would be either useful or entertaining to repeat them. We beg leave to refer to the case merely. Willis v. Heath, 18 S. W. Rep., 801.

Having disposed of all of the material questions which have been presented by the learned counsel for the appellants, and finding no reversible error in the proceedings below, we conclude that the judgment should be affirmed.

*Affirmed.*

Adopted June 21, 1892.