(21 Misc. Rep. 483.)

## ARONSON v. WERTHEIM.

### (Supreme Court, Appellate Term. October 28, 1897.)

BUILDING CONTRACTS—EXTRA WORK—EVIDENCE—SUFFICIENCY.

　　Plaintiff agreed to do all the mason work to finish up defendant's four houses. The plans for three inside houses were filed in 1894, when the law did not require the use of slabs for the water-closet floors; but the plans for the corner house were filed in 1895, when such floors were required, and the plans provided for such slabs. Plaintiff had no knowledge of such facts, nor had he ever seen the corner-house plans; and after he had done the mason work for the houses, without setting slabs for any house, defendant paid him the full amount named in the contract, and did not complain that the slabs were not in; nor had he procured the slabs, though the contract required him to furnish all materials. Plaintiff testified that subsequent to such payment he did further mason work, by setting slabs in the water-closet of the corner house, pursuant to an independent contract with defendant to pay him therefor, and that just prior to such contract an inspector of the building department directed defendant to put in such slabs, as required by the department. Defendant denied making any independent contract, and testified that he did not remember about the direction of said inspector. *Held*, that defendant made an independent contract.

Appeal from Fifth district court.

Action by Barnett Aronson against Herman Wertheim on a contract for the setting of stone slabs in a water-closet. From a judgment for plaintiff, defendant appeals. Affirmed.

Argued before DALY, P. J., and McADAM and BISCHOFF, JJ.

L. S. Finn, for appellant.

M. B. Blumenthal, for respondent.

McADAM, J. The defendant employed the plaintiff, under a written contract made August 22, 1896, whereby the latter agreed to do all the fireproofing and all the mason work to finish up the four houses, Nos. 230, 232, 234, and 236 Cherry street, for $275, to be paid as follows:

"When all fireproofing and door sills are set, $60; when all window sills are filled, inside and outside, $40; when all arches are in the staircase, $100; when all the work is completed, $75."

The plaintiff testified that after he had completed the work under this contract, and about September 18, 1896, he had a conversation with the defendant in reference to the setting of five stone slabs in the water-closets of No. 230 Cherry street, the corner house; that the defendant told him to go ahead with the work, and he would pay whatever the plaintiff charged for it. The plaintiff conceded that setting the slabs was mason work, but testified, in effect, that it was

47 N.Y.S.—42

never contemplated by his written contract that he should do that work, that it had never before that time been called to his attention, and that the slabs were put in after he had completed the written contract, and been paid in full by the defendant therefor. The plaintiff also testified that, just prior to the time when he made the arrangement with the defendant about slabs, an inspector from the building department called at the corner house, and directed the defendant to put the slabs in, as they were required by the department. The defendant was interrogated in regard to this feature of the case, and apparently declined to contradict the plaintiff, for all he seemed willing to say on the subject was that he did not remember. The circumstances seem to confirm the theory that neither party contemplated that the plaintiff should put the slabs in the closets, and that, had it not been for the building department, the plaintiff's first contract would have been deemed satisfactorily performed without that item. The defendant was to furnish the material for the work, and the slabs were not supplied until after he paid the plaintiff for the work under the written contract. If the defendant had expected the plaintiff to put in the slabs, he would naturally have furnished them in time, that that work might have progressed with the other work, and the final payment be taken to have applied to the entire job. The plaintiff certainly finished all he supposed he had contracted to do before the slabs came, and the contract price had been satisfied; and the putting in of the slabs was evidently an independent arrangement, as the plaintiff testifies. The defendant, when he paid the plaintiff, did not complain that the slabs were not in, or that the plaintiff was bound to put them in, and the fact that the defendant had not procured them then would indicate that he did not expect them to go in. The written contract does not refer in any manner to plans and specifications; nor was it proved by the defendant that any such had been shown to the plaintiff at the time the contract was made, or at any time during the progress of the work. The defendant testified that he bought three of the lots, with plans and specifications, some time in 1894, and that the plans for the corner house were filed by him in 1895, under the new law, which required slate floors in the water-closets. This circumstance, to which the attention of the plaintiff had never been called, obviated the using of slabs for the three inside houses, but required them for the corner house. This special reason for putting slabs in that house should have been brought to the attention of the plaintiff in some manner, and he might reasonably assume that, as they were not needed in the other three houses, they would not be required in the corner house. At all events, the parties, by their acts, placed a construction upon the contract which the court below had the right to consider. Woolsey v. Funke, 121 N. Y. 87, 24 N. E. 191; Nicoll v. Sands, 131 N. Y., at page 24, 29 N. E. 818; Insurance Co. v. Dutcher, 95 U. S. 269, 273; Tilden v. Tilden, 8 App. Div., at page 103, 40 N. Y. Supp. 403. Every contract is to be construed so that it may have effect according to the intention of the parties, if that can be done consistently with the rules of law. Parshall v. Eggert, 54 N. Y. 18. In interpreting agreements, courts will look at the surrounding circum-

stances, the situation and relations of the parties, and the subject-matter of their negotiations (Bank v. Recknagel, 109 N. Y. 482, 17 N. E. 217), and consider what the parties saw and knew, in order to ascertain their meaning (Clark v. Insurance Co., 64 N. Y. 33). The court, in determining the rights of the parties, availed itself of all these side lights, and came to a conclusion warranted by the proofs.

The defendant finally admitted that in September an inspector of the building department came to the three inside houses, and asked, "How is it that there is no slate there?" to which the defendant replied, "It is under the old law." The plans filed with the building department for the corner house were produced, and these words appeared therein: "The water-closets to be made tight, all slate." If the plaintiff had contracted with reference to these plans, it is evident that there could be no recovery. If, in the other three buildings, slate slabs had been required, it might be urged that they were required in the corner house as well. But when it appears, as it clearly does, that the slabs were to be omitted in the other three houses, the plaintiff, having no knowledge to the contrary, could reasonably have assumed that they were not to be put in the corner house. It is obvious that both parties supposed this to be so until the building department interfered, and that the independent contract by which the plaintiff was to put the slabs in was made after he had completed the written contract as understood by the parties, and after he had been compensated for such performance. The justice found, as he well might, on the evidence before him and the circumstances stated, that the defendant did make an independent contract for the putting in of the slabs, and the only question remaining for him to decide was as to the reasonable value of the work. This he fixed at $41.60, and the evidence amply sustains the finding.

We have examined the return in regard to the defendant's counterclaim for $55.50 paid to others for the doing of work alleged to have been left undone by the plaintiff. Concerning this, as also in regard to the independent contract, there was a sharp conflict of evidence. The plaintiff testified that he had completed the written contract before the additional agreement was made, and that the defendant, in recognition of such performance, had paid the contract price; the last installment having been paid as late as September 19, 1896. If the plaintiff fully completed his contract, as he testifies, there was no work left undone which he ought to have done, and consequently no basis for the counterclaim.

The judgment must be affirmed, with costs. All concur.